## Benner R. Myton v. Jas. A. Wilson et al., Appellants.

*Easement—Way—Reservation of moiety of spring—Access thereto.*

A reservation in a conveyance of one half a spring and a moiety of the spot of ground whereupon it arises implies access to the spring in some manner for the purpose of taking water; but with an existing channel natural or artificial conducting the water, the parties must, in the absence of any provision for a different mode of conveyance, be understood as contemplating the use of such channel for that purpose. No implication arises that will warrant the grantor or his successors in title, in laying a pipe over grantee's lands.

Argued October 19, 1897.  Appeal, No. 11, March T., 1897, by defendants, from judgment of C. P. Huntingdon Co., Dec. T., 1895, No. 20, on verdict for plaintiff.  Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Trespass.  Before BAILEY, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict for plaintiff for $5.00.  A certificate having been filed that the value of the right or interest involved was less than $1,000, defendant appealed.

*Errors assigned* were (1) In its answer to defendants' second point, as follows : " 2. The deed of the executor of William Johnston, Esquire, to George Rung in 1824 for the adjoining and remaining portion of his farm under a power in his will to sell real estate vested in George Rung the title to one undivided half of the spring and spot of ground on which it rises as an appurtenance and constituent part of the tract of land therein described.  *Answer :* Refused."  (2) In its answer to defendants' fifth point, as follows : " 5. If the jury believe that Thomas F. Stewart and James Myton, predecessors in the title of Benner R. Myton, claimed only one fourth each of the spring as testified by Bilger Shipton and John B. Frazier, Benner Myton is estopped and cannot claim that James A. Wilson is a trespasser in entering upon the other undivided half, under a claim of right. *Answer :* This point is refused as not material."  (3) In charg-

ing the jury as follows, to wit: "There is no physical connection of the spring with the land conveyed to Rung; there is no evidence that William Johnston used the spring as an incident or appurtenance to this land; or that he in any manner connected the one with the other in their use." (4) In instructing the jury as follows: "An appurtenance is defined to be 'a thing belonging to another thing as principal and which passes as incident to the particular thing.' It must be necessary to the full enjoyment of the thing granted, and in use at the time of the grant as incident thereto. In this state it is held that what is necessary to the enjoyment of the thing granted passes with it as an appurtenance, without express words; but what is merely convenient to its enjoyment does not." (5) In instructing the jury as follows: "The property now owned by Wilson had been occupied by William Johnston and the several intermediate owners without any connection whatever between it and the use of the spring as an attachment to it. For eighty-five years each successive owner enjoyed the use of the water flowing from this spring by reason of his right thereto as riparian owner. Therefore, it could not at the time of the original grant, have been actually necessary to the enjoyment of the land now owned by the defendant Wilson. There was no act of William Johnston, no express words in the deed of his executors to Rung conveying the interest of Johnston in the spring, or the water flowing from it, and we are of opinion that the general words conveying the 'appurtenances thereto belonging' do not include the spring; and therefore the interest of Johnston in it is not now owned by Wilson, and it is our opinion that he had no right to enter the land of the plaintiff, intervening between his land and the spring for the purpose of laying pipe to conduct water therefrom. It is not material that Johnston must have intended to use the water from the spring or convey it to his land as argued by the learned counsel for the defendant. The fact remains that he did not so use it, and that there was no connection whatever between the use of the spring and the use of the land until the defendant laid these pipes in 1895, except the use he was entitled to of the water flowing from the spring down its natural channel by virtue of his being the owner of lands abutting on that channel. We feel bound to instruct you that the defendant had no right to lay down the pipes on the land of the plain-

tiff, and that the plaintiff may recover in this action, whatever damage he has sustained by reason of the defendant's entry on his land. If we are in error in our view of the law we feel gratified to know that such error may be corrected by a higher court on appeal." (6) In instructing the jury as follows: "The only question that remains for you to determine is the amount of damage the plaintiff is entitled to under the evidence." (7) In charging the jury as follows: "You will determine the amount of damage to compensate him for the injury done and render your verdict accordingly." (8) In charging the jury as follows: "The only question that remains for you to determine is the amount of damage the plaintiff is entitled to under the evidence."

*Charles G. Brown* and *H. H. Waite*, for appellants.—A right reserved in a deed and spread on record is in the chain of title to the lands upon which the right is reserved, and is constructive notice to the persons who subsequently purchase the said lands: Bombaugh v. Miller, 82 Pa. 203; Hayes v. R. R. Co., 51 N. J. Eq. 345.

To the same effect is the case of Whitney v. R. R. Co., 77 Mass. 359; 71 Am. Dec. 715.

An easement is not presumed to be a mere personal right or in gross, when it may be fairly regarded as appurtenant to some other estate: Gould on Waters, sec. 301; Dennis v. Wilson, 107 Mass. 591.

Mere nonuser for any length of time of an easement created by express grant, will not destroy or extinguish it. There must be some conduct on the part of the owner of the servient tenement, adverse to and in defiance of the easement, and the nonuser must be the result of it and must continue for twenty-one years: Dill on Board of Education, N. J. 10, L. Rep. Ann. 276; Hall v. McCaughey, 51 Pa. 43; Lathrop v. Elsner, 93 Mich. 599.

*W. H. Woods* and *A. O. Furst*, with them *J. S. Woods*, *W. McK. Williamson* and *T. W. Myton*, for appellee.—But aside from this, an adverse user and possession of the servient estate coupled with nonuser by the dominant, when continued for the time of the statute of limitations, will destroy an easement or,

to speak more accurately, will raise a presumption of a release: Jennison v. Walker, 77 Mass. 423; 4 Leading Cases Am. Law on Real Property, 156.

It is confidently submitted:

1. That the estate left in William Johnston, Sr., the grantor, under the deed of August 17, 1810, did not create an easement of any description. It is to be regarded as an estate remaining in him precisely as if he had never made the conveyance of the eighty-one acre tract.

2. That William Johnston, retained such interest in the spring, and the water flowing therefrom, did not make the tract of land conveyed by him, a tenement servient to any other tenement or tract of land.

3. That there was no connection or annexation of his estate in the spring to the tract of land, the title to a portion of which became vested in appellant.

4. That there was no grant made by William Johnston, or any successor in title, by which his estate in the spring was conveyed or annexed to appellant's land.

5. That there never has been any prescriptive use of the said spring for the advantage or benefit of appellant's lands.

6. That appellant, in entering forcibly into the close of the plaintiff, breaking the soil, digging a trench, laying a pipe therein, and taking the water from the spring in the interior of plaintiff's tract, was guilty of a trespass, and was liable to the plaintiff as a trespasser.

OPINION BY SMITH, J., January 18, 1898:

The trespass of which the plaintiff complains was the laying of a pipe through his land, by the defendant, for the conveyance of water from a spring thereon to the defendant's land adjacent. The defendant contends that the right to do this is an easement appurtenant to his land.

William Johnston, in 1810, conveyed part of a tract of land to his sons, William and John, and by his will, executed later, authorized his executors to sell the residue. The plaintiff holds under the deed and the defendant under the will. The deed contains the following stipulation: "Provided always, nevertheless, and it is hereby declared to be the express intent and meaning of the parties to these presents, that the right to one

moiety or half part of a certain spring which rises on the above described land, opposite to and about ten perches east south east of a red oak, corner of the line, south eight degrees west twenty-four perches, and which crosses the said line, south eight degrees west twenty-four perches passing in a northwesterly course between the lines, south thirty-four degrees east twenty-four perches to a still house and south thirty degrees west eighty-six perches to a white oak, and the free use, liberty and privilege of the same shall still subsist in and continue and remain unto the said William Johnston, esquire, his heirs and assigns. To have and to hold the said above described land hereby granted, or mentioned, and intended so to be with the appurtenances unto the said William Johnston, Junior, and the said John Johnston, their heirs and assigns, as tenants in common, and not as joint tenants, to the only proper use, benefit and behoof of them the said William and John and their respective heirs and assigns forever. Excepting, nevertheless, the right to one half part of said spring and one moiety of the spot of ground whereupon it arises, which the said William Johnston, esquire, expressly reserves, as aforesaid, to himself, his heirs and assigns forever."

The defendant contends that the water right thus described became appurtenant to the land retained by the grantor, and passed to his successors in title. As the case is presented, however, a determination of this point is unnecessary. First, there is a question as to the identity of the spring described with that reached by the defendant's pipe. Next, it appears that a natural outlet or channel existed, by which the water of the latter spring was conveyed to the defendant's land, and there is no allegation of interference therewith by the plaintiff. If the spring to which the defendant laid his pipe was not the one mentioned in the stipulation, it is clear that the pipe was laid without right. If it was that spring, the first question to be considered is whether the stipulation, if creating a right appurtenant to the defendant's land, authorized him to lay the pipe. Access to the spring in some manner, for the purpose of taking water, it undoubtedly implied. But with an existing channel, natural or artificial, conducting the water, the parties must, in the absence of any provision for a different mode of conveyance, be understood as contemplating the use of such channel for that

purpose. There is no express provision for a departure from this channel, or for the laying of a pipe through the land conveyed; while the description, beginning with the spring, follows with courses and distances that apparently refer to its outlet, as if for the purpose of including it. Under the terms of the stipulation, therefore, the grantor had a right to so maintain the existing channel as to keep it adequate for the purposes of the stipulation. He had no right to construct a channel elsewhere. If such a right can be implied, it is without limit, and the grantor might change the channel as often as he desired. Such a construction would give him an unreasonable dominion in the premises; one beyond evident need and beyond the apparent intention of the parties. To say that he had a riparian right to the flow through the natural channel, independent of the stipulation, does not meet the case. This right was limited to the natural flow from the spring, which might have been less than the quantum stipulated for. The stipulation gave the right to a fixed proportion of the spring water, and must be construed as contemplating its conveyance by the existing channel, with a right to make such improvement or enlargement as might be found necessary to its sufficiency. This was the extent of the defendant's right, and the substitution of another mode of conducting the water through the plaintiff's land without his consent was unwarranted. Since this change in the manner of its enjoyment was without authority, the question whether the water right was appurtenant to the defendant's land becomes immaterial.

Judgment affirmed.